SECRETARY OF THE TREASURY, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, A. D. MARCHAND PAZ, JUDGE, Respondent; PEDRO SILVA PABÓN, Intervener.

No. C-65-45.     Decided December 16, 1965.

*J. B. Fernández Badillo, Solicitor General,* and *Peter Ortiz, Assistant Solicitor General,* for petitioner. *Genovevo Meléndez Carrucini* for intervener.

Second Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Santana Becerra, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

The record shows that the Secretary of the Treasury audited the income tax returns of the taxpayer Pedro Silva Pabón for the years from 1951 to 1957, and determined a taxable net income for those years in the amount of $30,779.54. For the years 1958, 1959, and 1960 the taxpayer filed tax-exempt returns. In April 1960 news of a burglary for $60,000 from the taxpayer's residence was published. The Secretary ordered an investigation of the fact and as a result thereof he determined taxpayer's capital assets at the time of the burglary, April 1960, and included as assets in said capital the aforementioned $60,000. He deducted from the capital assets the income he considered the taxpayer had for investment by January first, 1958 and considered the difference as an increment of income which the Secretary distributed proportionately at a rate of $33,953.40 for each of the years 1958, 1959 and $11,317.93 for 1960.

As a result of this capitalization the Secretary notified the taxpayer of deficiencies amounting to $8,052.24 for 1958 and of $7,503.69 for 1959. The taxpayer filed his tax-exempt return for 1960 in April 1961. On April 25, 1962 the Secretary finally notified the deficiencies involved in this suit for the years 1958 and 1959. The Secretary did not notify deficiencies for 1960, notwithstanding the fact that he had determined the taxpayer's taxable income for that year in addition to the income declared, in at least $11,317.93.

The taxpayer challenged the deficiencies before the Superior Court, San Juan Part, in a complaint in which he alleged that the Secretary, illegally and erroneously, had computed for said years those alleged incomes which were nonexistent. Subsequently, after changing legal representation, he asked to be allowed to amend his complaint to include the allegation that upon determining the income for said years 1958 and 1959, the Secretary had not allowed the deductions to which he was entitled including a net loss in

operations for 1960 on account of the robbery, which he could carry back to the preceding year 1959. The trial court permitted the amendment to the complaint. It is this action which we now review by way of certiorari without delving into the merits of the question in issue.

In his petition before us the Secretary maintains that the amendment does not lie because the taxpayer had not claimed those deductions either in his return or before the Secretary; that the Secretary had not "had opportunity to investigate" whether the alleged loss was actually deductible, and that the item the taxpayer seeks to discuss was not before the Court and, furthermore, it corresponded to a year subsequent to the years in litigation.

Prior to its amendment by Act No. 8 of April 19, 1963, effective for taxable years commenced after December 31, 1961, subdivision (e) of § 23 of the Income Tax Act of 1954 allowed the individual as a deduction from his gross income (3) the losses sustained during the taxable year and not compensated for by insurance or otherwise, of property not connected with the trade or business, if the loss arises from fires, storms, etc., or from theft.

Subdivision (s) of the same § 23 allows as deduction from the gross income for any taxable year beginning after December 31, 1953, the net operating loss deduction computed under § 122. Section 122 defines net operating loss as the excess of the deductions allowed by this Act over the gross income with the exceptions, additions, and limitations provided in said section. Section 122 also gives the taxpayer the right to consider that operating loss as a net operating loss carry-back for the preceding taxable year, and a carry-over for each of the five succeeding taxable years.

In support of his position, petitioner invokes emphatically the decision of this Court in *Arbona Hnos. Trading* v. *Sec. of the Treas.*, 91 P.R.R. 81 (1964), and the cases of

*Piñán* v. *Sec. of the Treas.*, 83 P.R.R. 303 (1961) and *Petrovich* v. *Sec. of the Treas.*, 79 P.R.R. 237 (1956). In the case of *Arbona* there was a judgment from the court fixing the amount of the deficiencies in litigation. In the subsequent incident regarding the computation of taxes, the taxpayer alleged that during the years involved he had leased a rental-producing building to tax-exempt industrial enterprises and he requested the Court that upon computing the taxes it consider the tax exemption on said rent. It was true that said rents were tax exempt and also that the taxpayer had included them as taxable income in his returns. The trial court refused to grant the request and also to set aside the judgment so that the exemption mentioned could be alleged. In that case we stated: "Unquestionably, at the hearing for the computation it was not proper to adjudicate the taxpayer's claim as a result of this exemption, *foreign to the items being discussed. Buscaglia, Treas.* v. *Tax Court*, 67 P.R.R. 12 (1947). It is true that the taxpayer included in his income the rents paid by said tax-exempt industrial entities as verified by the Department of the Treasury. But the refusal of the trial court to set aside the judgment must be upheld because it was a question of a claim of an exemption granted by law, *and not of a fact which was part of the controversy.* The previous administrative determination was required, since the elimination of said income could result in the readjustment of other aspects of the return. For example, § 24 of the Income Tax Act of 1954 does not allow deductions, otherwise admissible, in connection with an exempt income." (Italics ours.) See, nevertheless, *García Díaz* v. *Sec. of the Treas.*, 91 P.R.R. 397 (1964), next to last paragraph of the opinion; *Central Roig* v. *Sec. of the Treas.*, 83 P.R.R. 871 (1961); *Community of the Heirs of Fajardo* v. *Tax Court*, 73 P.R.R. 499, 512 (1952); *Reyes* v. *Sec. of the Treas.*, 84 P.R.R. 574, 585 (1962).

In *Piñán* v. *Sec. of the Treas.*, the trial court upheld deficiencies for the years 1945 and 1946, but it also ordered an adjustment crediting to the tax determined for 1945 the tax paid over certain sums reported as income on the same account for the years 1941, 1942, 1943, and 1944. We followed the ruling established in *Petrovich* v. *Sec. of the Treas.*, *supra*, and sustained that § 57 (h) of the Income Tax Act of 1924, to which section we shall refer further on, limited the jurisdiction of the Superior Court to fixing the deficiency for the taxable year in controversy, and that there was no jurisdiction to determine whether overpayments had been made for any preceding or subsequent taxable year, for the purposes of deciding any recoupment by way of defense based on such excessive payments.

In the original opinion of *Petrovich* v. *Sec. of the Treas.*, 77 P.R.R. 152 (1954), the taxpayer, by way of recoupment, requested the Court to grant him, against the tax determined for 1941, amounts which he alleged to have paid in excess for the same concept of income for the years 1942 and 1943. Under those circumstances we said that in order for the recoupment doctrine to be applicable, the facts must disclose that the taxpayers therein had a credit in their favor and against the Government as a result of the taxes paid *in excess* in 1942 and the facts would have to be examined to determine whether the requirement that it arose out of the same transaction had been met. We said that it was unnecessary to go into the latter at that time because the uncontroverted facts showed at the most that the taxpayers had paid taxes on the same kind of income for 1942 and 1943, and that did not in itself imply that the taxpayers had a credit against the Government if, in fact, they had not shown that they paid taxes in excess in 1942 and 1943, inasmuch as, for making this determination, the Secretary of the Treasury had authority to reaudit all the items reported in those years in order to ascertain whether such

overpayment was made. We said that taxpayers cannot claim, by way of recoupment, an overpayment based on only one of the items involved.

In the opinion delivered on *reconsideration*, 79 P.R.R. 237, this Court did not actually pronounce itself on the matter because it applied, pending an appeal, § 57(h) added to the 1924 Act and the majority declared itself without jurisdiction in this matter. See also *González Padín Co.* v. *Tax Court*, 66 P.R.R. 909 (1947) and *Cía. Azucarera* v. *Tax Court*, 72 P.R.R. 850 (1951).[1]

The case at bar presents an entirely different picture of fact and of law. The question involved here is not the litigation of substantive items by way of the incident of the tax computation nor a recoupment problem, whether legal or of an equitable nature, according to the cases mentioned. When the Income Tax Act of 1954 was approved on June 29 of that year,—§ 272(g) of said Act—it provided for the first time in Puerto Rico as follows:

"The Superior Court in redetermining a deficiency in respect of any taxable year shall consider such facts with relation to the taxes for other taxable years as *may be necessary correctly to redetermine the amount of such deficiency*, but in so doing shall have no jurisdiction to determine whether or not the tax for any other taxable year has been overpaid or underpaid."

██ For the purpose of unifying the proceeding, both for the litigation of deficiencies for years prior to the 1954 Act and for the years covered by the legal effect of this Act, Act No. 9 of October 8, 1954 was subsequently enacted and the aforementioned provision, § 272(g), was added to the 1924 Act, as § 57(h). It is obvious, as we held in *Petrovich* and afterwards in *Piñán*, aforecited, that in determining a tax deficiency for any taxable year the Court does not have the authority to decide whether the tax for

---

[1] See also *Ronrico Corp.* v. *Treasurer*, 77 P.R.R. 388 (1954).

any other tax year has been overpaid or underpaid, which prevents it from making any determination, by way of recoupment or otherwise, of the existence of a credit of the tax paid in excess in other years against the tax determined. But it is not less obvious that § 272 (g) empowers the Superior Court, when determining a deficiency with respect to any tax year, to consider such facts with relation to the taxes for other tax years as may be necessary to determine *correctly* the amount of a deficiency for a particular year.

■■ The taxpayer was notified of a deficiency for 1959. Section 122 of the Act allows the carry-back of a net operating loss suffered in 1960 to the 1959 taxable year. This carry-back was innovated with the 1954 Act and the then Secretary of the Treasury, Mr. Descartes, submitted it to the Legislature with his full backing and defended it as a provision to alleviate the taxpayer. A net loss in operations for 1960 carried back by law to 1959 is a legitimate item of deduction against the income when determining the taxes for this year, pursuant to § 23 (s). In the light of § 272 (g), the Court has authority to consider the fact of a net loss in operations for 1960, so that it can determine *correctly* the taxes for 1959. It is not, then, a case of recoupment or of determining payment in excess for a prior or subsequent year that is sought to be credited.

The taxpayer filed his return in April 1961. The deficiency for 1959 was finally determined in April 1962. The facts do not convince us that the Secretary of the Treasury did not have "the opportunity of *auditing* the year 1960 of the taxpayer." In fact, it opened the investigation and determined his income. When deficiencies were not notified for 1960, the proceeding of the administrative hearing was limited to 1958 and 1959. Notwithstanding the fact that income in excess of that reported had been determined for April 1960, the Secretary did not notify deficiencies for that

year. He would probably never notify them if we consider that he used the amount object of the theft itself as part of the taxpayer's capital. It is logical to think that the Secretary considered that the total income for 1960 could have been absorbed by said amount of $60,000. Anyway, the fact that he did not notify a deficiency for 1960, while able to do so, cannot deprive the taxpayer of exercising the important right granted to him by § 122, or deprive the Court of the prerogative granted by § 272(g). The legislative standard has tended to mitigate the former rigor as may be seen by this § 272(g), which was also an innovation here in 1954, and by the standard set up by Act No. 27 of May 23, 1963, which amended subdivision (e) of said § 272, which rises as a guidepost.

Of course, we have before us a problem of mere allegations. We do not sustain here the existence on the merits of the net loss. The taxpayer shall be bound to prove in court the occurrence of such loss as well as the existence of all those elements and circumstances, adjustments and exceptions applicable by law, so that it be carried back. The Secretary, in the course of the litigation, has all the authority to attack and challenge the existence of said loss with all such other elements as are required by law.

For the foregoing reasons, the decision of the trial court to allow the aforesaid amendment to the complaint is correct and, consequently, the writ of certiorari issued is hereby quashed.